No. 13793

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JIMMY RICHARD ROBEY, DAVID JOHN
PETERMAN, and JOAN SMITH TUTEN,

Defendants and Appellants.

---

Appeal from: District Court of the Eleventh Judicial District,
Honorable James M. Salansky, Judge presiding.

Counsel of Record:

For Appellants:

Daley and Sherlock, Kalispell, Montana
Patrick D. Sherlock argued, Kalispell, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Brenda Gilmer, Assistant Attorney General, argued,
Helena, Montana
Patrick M. Springer, County Attorney, Kalispell,
Montana
Russell Jones, Deputy County Attorney, argued,
Kalispell, Montana

---

Submitted: January 20, 1978

Decided: APR 24 1978

Filed: APR 24 1978

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendants Robey, Peterman and Tuten have filed consolidated appeals from their convictions in the District Court, Flathead County, for participating in card games within premises not licensed for gambling. Defendant Robey also appeals from convictions in District Court, Flathead County, for operating an unlicensed premises for the purpose of conducting card games and for possession of illegal gambling paraphernalia.

On the morning of December 1, 1976, an informer telephoned the Flathead County sheriff's department and told Chief Detective Robert Soderstrom he suspected that "there would be a game that evening at the Stagecoach Inn." The informant stated defendant Jimmy Robey would host the poker game that evening upstairs at the Stagecoach Inn. The informant also named various people who would participate in the game, all of whom the detectives knew as "poker players, dealers, licensed establishment operators". Later that day, the same informant telephoned Detective Soderstrom and reaffirmed his earlier assertion that a poker game was to be held at the Stagecoach Inn in Somers, Montana. In the second telephone call, the informant stated the game would start between 10:00 and 11:00 p.m.

Shortly after the informant's second phone call, Detective Soderstrom summoned three other detectives to the sheriff's office to meet with him and the Flathead County attorney. The group met at about 9:00 to 10:00 p.m. The county attorney gave one of the detectives, Allan Harkins, $300 "flash money" to be used to attempt to buy into the supposed illegal poker game.

The detectives, accompanied by one uniformed officer, arrived at the Stagecoach Inn parking lot shortly after midnight on December 2, 1976. While the three detectives remained in the parking lot, Detective Harkins entered the Stagecoach Inn where he assumed the role of a high rolling Alaskan in search of some gambling thrills.

Although upon arrival at the Stagecoach Inn the detectives had seen approximately twenty cars in the parking lot, Detective Harkins observed only four people in the downstairs bar area. Detective Harkins testified to hearing the sound of poker chips and voices emanating from an upstairs room as he passed an unmarked stairway close to the entrance of the Inn on his way to the bar. After approximately ten minutes, Harkins left the bar to report his findings to Detective Soderstrom. Soderstrom directed Harkins to return to the Inn and to attempt to enter the card game.

Detective Harkins re-entered the Inn and told the barmaid that he was an Alaskan looking for a poker game. Defendant Robey, the owner of the Stagecoach Inn, entered the bar area while Harkins was telling his story to the barmaid, and told the barmaid "we don't play poker here." Harkins, who was in the bar from approximately 12:15 to 1:45 a.m., observed a man twice carry trays of six drinks up the unmarked stairway and return with empty glasses.

The detectives in the parking lot observed a man on two occasions move cars from the front parking lot of the Inn to some location behind the bar. About an hour and a half after their arrival at the Stagecoach Inn parking lot, at approximately 1:45 a.m., the detectives and the uniformed officer entered the Inn, ran up the stairs, entered an upstairs doorway and arrested eleven people playing poker in

an upstairs room. The detectives seized various checks, cash and I.O.U.'s, playing cards, poker chips, punch boards, and a felt covered poker table, all of which were found in the upstairs room of the Inn at the time of defendants' arrest. The detectives also took numerous photographs of the gambling paraphernalia they found in the room. The detectives had neither a warrant for defendants' arrest nor a warrant to search the room.

The Flathead County attorney filed two informations in District Court. In counts one and two of one information, the county attorney charged defendant Robey with operating an unlicensed premises for the purpose of conducting card games and with possession of illegal gambling paraphernalia, both violations of Flathead County Gambling Commission Regulations, enacted pursuant to the Montana Card Games Act, section 62-701 et seq., R.C.M. 1947. In count three of the second information each of the defendants, including Robey, was charged with participating in card games within premises licensed to dispense intoxicating beverages but not licensed for gambling as required by Regulation 3.10, Rules and Regulations of the Flathead County Gambling Commission.

Defendants submitted a motion to dismiss based on a claim that the acts charged took place within a private residence, and were thereby excluded by section 94-8-403, R.C.M. 1947, from the coverage of the Montana Card Games Act or local gambling regulations. The court denied the motion, ruling as a matter of law that Robey's upstairs apartment was not a private residence. The District Court also denied defendants' motion to suppress evidence seized in the course of the warrantless search of Robey's apartment.

Robey was tried before a jury and convicted of operating an unlicensed premises and possession of illegal gambling paraphernalia. In a separate nonjury trial, defendants Robey, Peterman and Tuten were tried and convicted of participating in a card game on an unlicensed premises.

Defendants raise the following specifications of error on appeal:

1. Did the detectives have probable cause to enter the upstairs room of the Stagecoach Inn, arrest defendants, and search the room?

2. Were the detectives required by Montana statutory law or by the Montana or United States Constitutions to obtain an arrest warrant prior to defendants' arrest?

3. Was the room in which the poker game was conducted a "private home" within the meaning of section 94-8-403, R.C.M. 1947?

4. Was defendant Robey subjected to double jeopardy by being convicted of conducting a poker game on unlicensed premises and by subsequently being convicted of participating in the same game?

5. Did the District Court commit numerous errors at trial denying defendants a fair trial?

In our view, the first issue is dispositive of this appeal. United States constitutional requirements govern searches and arrests without warrants and furnish the answers to this issue.

Here, there was neither probable cause to arrest these defendants nor to search the apartment under United States constitutional standards. These requirements for determining probable cause to search or arrest without a warrant are essentially the same. Spinelli v. United States, (1969),

393 U.S. 410, 417, 89 S.Ct. 584, 21 L ed 2d 637.  The probable cause requirements for a warrantless arrest, if not more stringent, " * * * surely cannot be less stringent than where an arrest warrant is obtained * * * ."  Wong Sun v. United States, (1963), 371 U.S. 471, 479-80, 83 S.Ct. 407, 9 L ed 2d 441.  This Court has noted that " * * * when hearsay information forms the justification for a finding of probable cause * * * the two-pronged test set out in Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L ed 2d 723, must be applied and satisfied * * * ."  State ex rel. Townsend v. District Court, (1975), 168 Mont. 357, 360-61, 543 P.2d 193.

In invalidating a search warrant in Spinelli v. United States, supra, the United States Supreme Court applied the two-pronged test of Aguilar v. Texas, (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L ed 2d 723, and first considered the weight of the informant's tip apart from other allegations of probable cause:

> "* * * Though the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion.* * *"  Spinelli, 393 U.S. at 416.

In this case Detective Soderstrom stated "I have gotten information [from the informant] that was reliable" and that he had known the informant for a number of years.  Detective Soderstrom later testified he did not believe the informant's tip alone provided probable cause to arrest, and the State, in a brief to the District Court, stated that the citizen who gave the tips was " * * * not known to be a reliable informant."

It is the second prong of the Aguilar test, however, which the arrest most completely failed to satisfy.

" * * * The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information--it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. Moreover, if the informant came by the information indirectly, he did not explain why his sources were reliable. * * * " Spinelli, 393 U.S. at 416.

Here, Detective Soderstrom testified neither did he himself know how the informant acquired the information nor did the informant tell him where he had acquired his information. Under such circumstances, there is no way of determining whether the informant was simply repeating a casual rumor or whether his tip was based on personal observations.

Nor did the informant describe with particularity the accused's activities on the night of the arrest so as to permit corroboration of the details to give rise to the inference that the informant had gained his information in a reliable way. In Draper v. United States, (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L ed 2d 327, the informant reported the defendant had gone to Chicago the day before by train and he would return to Denver by train with three ounces of heroin on one of two specified mornings. The informant in Draper also described the clothes the defendant would be wearing and the bag he would be carrying, and stated that he habitually "walked real fast". When the police investigation corroborated these details they could reasonably conclude the informant had personal knowledge of defendant's habits and criminal activity.

In contrast, the informant in this case stated merely that there would be a poker game hosted by Robey upstairs at the Stagecoach Inn starting between 10:00 and 11:00 p.m. It is not particularly surprising that Robey would be at the

-7-

Inn since he owned the Inn and lived upstairs. The police arrived at the Inn too late to corroborate the alleged starting time. The only information gathered in the police investigation which was more indicative of a poker game than merely a private party was Detective Harkins' statement that he became suspicious when he heard what he thought to be the sound of poker chips being shuffled upstairs as he entered the bar. Given the fact the door to the upstairs apartment where defendants were playing cards is approximately 30 feet from the bottom of the stairs, this evidence loses much of its vitality. The weight of the poker chips testimony under these circumstances, is hardly enough to give rise to probable cause to enter the apartment and arrest defendants.

The actions of the arresting officers indicate they themselves were highly doubtful there was probable cause to enter Robey's room and arrest defendants. The officers quite correctly did not believe there was probable cause to arrest as is evidenced by Detective Soderstrom's testimony that he did not feel the informant's tip provided probable cause to arrest. Nor did the arresting officers by their actions appear to believe there was probable cause to arrest when Detective Harkins returned to the parking lot, after having been in the bar for about ten minutes, and related to the detectives that there were few people in the downstairs bar area, but he had heard what he thought to be the sound of poker chips and had seen drinks being carried upstairs. Detective Soderstrom, upon receiving this information, merely instructed Detective Harkins to return to the bar and attempt to enter a poker game. Detective Harkins re-entered the bar, and he remained there in excess of an hour--without reporting any additional observations to the arresting

officers--in an unsuccessful attempt to join the supposed card game.

The arresting officers themselves, while sitting in the parking lot observing the bar, saw nothing that would add to probable cause. The State emphasizes the officers' observation of a man who twice moved cars from the front lot to the rear of the bar. This, however, is hardly an action in which poker players rather than party-goers are more likely to engage. It appears from the evidence that the officers stormed the stairs to defendant Robey's apartment and arrested defendants at 1:45 a.m., not because of an accumulation of factors creating probable cause, but merely because the bar would soon close and the doors would then be locked. "* * * mere unconfirmed suspicion is not the criteria upon which probable cause is based. Something more was needed, and even the agents recognized this.* * *" United States v. Jackson, (6th Cir. 1976), 533 F.2d 314, 319.

Nor did the fact the police officers saw gambling paraphernalia and a card game in progress as they entered defendant Robey's room provide probable cause to justify an otherwise illegal arrest, search and seizure.

> "Thus the Government is obliged to justify the arrest by the search and at the same time to justify the search by the arrest. This will not do. An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion. Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers, and effects,' and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law." Johnson v. United States, (1948), 333 U.S. 10, 16-17, 68 S.Ct. 367, 92 L.ed. 436.

This Court has previously applied the same analysis of United States constitutional requirements in a case involving an illegal entry without a search warrant into a private residence where contraband was discovered.

> "As an entry is lawful or unlawful at the time it is made, the subsequent search has the same legal character as the entry which made it possible. (Citation omitted.) Thus where, as here, the entry into defendant's residence was unlawful, the search was likewise unlawful as it was the product of the illegal entry. And a search is lawful or unlawful when it starts and does not change that character from its success. (Citation omitted.) Thus a search unlawful in its inception is not validated by what it turns up. (Citation omitted.) * * * " State v. Langan, (1968), 151 Mont. 558, 567, 445 P.2d 565.

Because there was no probable cause either to search without a warrant or to arrest defendants without a warrant, the arrests and seizure of the evidence incident to the arrests violated the Fourth Amendment, United States Constitution. Accordingly, the evidence seized should have been suppressed, and its introduction at trial constituted reversible error.

Absent the evidence illegally seized, there was insufficient evidence to support the convictions. Thus a new trial cannot be granted, and the case must be dismissed. State v. Langan, supra.

In view of our holding, the remaining specifications of error need not be discussed as their determination would not affect the result in this case.

Reversed and dismissed.

_____
Chief Justice

We Concur:

_____

_____

_____
Justices

Mr. Justice John C. Sheehy did not participate in this case.

-10-

Mr. John Conway Harrison dissenting:

I dissent. Here the informant gave Detective Soderstrom "the names of known poker players, dealers and licensed establishment operators" who were to later participate in the game at the Stagecoach Inn. This added to the fact that on the same call the informant told the police the game was on for that night, plus the arrival of the cars at the inn and the later sound of poker chips coming from the second floor, all are in my opinion sufficient cause to sustain the convictions .

In Draper v. United States (1959), 358 U.S. 307, 313, 79 S.Ct. 329, 3 L ed 2d 327, 332, the Court speaking to whether there was probable cause noted:

> "* * * Probable cause exists where 'the facts, and circumstances within [the arresting officers'] knowledge and of which they had reasonable trust-worthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."

I would affirm the convictions.

Justice.

- 11 -