MR. CHIEF JUSTICE HASWELL
delivered the opinion of the Court.
Relator James Zander has filed an original application for a writ of supervisory control in this Court seeking review and reversal of the District Court’s denial of his motions to dismiss and suppress a pending criminal case against him.
On November 4, 1977, Zander’s neighbor in the Juniper Trailer Court outside the city limits of Missoula, Montana reported to the sheriff’s office that someone was tampering with the kitchen window in relator’s trailer home. Deputy Hintz was advised there was a burglary in progress and was dispatched to the scene. Upon arrival Deputy Hintz went directly to the residence of the neighbor who had reported the incident. The neighbor told him there was no one at home at Zander’s trailer home and that the trailer door was always kept locked.
Deputy Hintz observed a light over the kitchen sink in the Zander home, could not see anyone inside, noticed no signs of entry through the kitchen window, and saw no one nor anything suspicious outside the house.
*551 He knocked at the door and received no response. He tested the door handle and found the door unlocked. He thought the reported prowler or burglar might be hiding in the house so he entered. He walked through the living room and the kitchen which appeared undisturbed. Deputy Crego, who had been dispatched to the scene as a backup man, entered the house moments after Deputy Heintz’ entrance.
The officers then entered the back bedroom and saw a light shining under the closet door. They opened the door and discovered marijuana plants growing there under artificial light. Another closet disclosed the same scene.
The officers had no reason to believe there were any marijuana plants or drugs on the premises. They searched only those areas of Zander’s home where a prowler or burglar could have been hiding.
The officers left Zander’s house, secured a search warrant, returned, and seized the marijuana plants, two coffee cans containing suspected marijuana plant material, and 2 one ounce plastic baggies of marijuana.
Zander was charged with the criminal sale of a dangerous drug by reason of the unlawful cultivation of marijuana. He moved to dismiss the charge and to suppress the evidence seized. The District Court of Missoula County denied all motions to dismiss and suppress.
Zander then applied to this Court for a writ of supervisory control to test the correctness of these rulings. We set the matter for adversary hearing and ordered briefs filed. In addition to the briefs of the parties, amicus briefs were filed by the American Civil Liberties Union and by the County Prosecutor’s Services Bureau.
Five issues are presented in this matter:
(1) Is-supervisory control an available remedy?
(2) Did the search violate the right of privacy provision in the State Constitution?
(3) Did the search violate the constitutional prohibition against unlawful searches and seizures?
*552 (4) Does the statute under which defendant is being prosecuted violate the equal protection guarantee in the State Constitution?
(5) Does the statute under which defendant is being prosecuted violate the “due process” requirement of Montana’s Constitution?
The State contends that supervisory control is not a proper remedy here because the District Court’s rulings were neither arbitrary or unlawful and that an adequate remedy by appeal is available in the event of relator’s conviction.
The writ of supervisory control is not a common law or statutory writ. It is derived from Montana’s constitutional provision granting this Court general supervisory control over all other courts. Article VII, Sec. 2(2), 1972 Montana Constitution. A similar provision existed in Montana’s 1889 Constitution, Article VIII, Sec. 2. The writ has long been established as a part of this state’s law and the discretionary use of this writ in original proceedings before this Court has a history of over 50 years.
The discretion to use this writ is determined by the needs of the individual case. Comparatively recently, it was used to test the constitutionality of the same statute here attached at the close of the State’s case-in-chief. State ex re. LeMieux v. Dist. Court (1975), 166 Mont. 115, 531 P.2d 665, appeal dism., sub. nom. Dist. Court of Fifth Judicial District of Montana ex rel. LeMieux, 442 U.S. 1030, 95 S.Ct. 2647, 45 L.Ed.2d 687. Because we wish to again examine the constitutionality of the statute, we exercise our discretion to do so by supervisory control prior to trial rather than limiting defendant to his remedy by appeal in the event of his conviction following trial.
We will discuss the second and third issues in this proceeding together Defendant argues that the search and seizure here was unlawful for two reasons: (l)that it violated the “search and seizure” provisions of the United States and Montana Constitutions, and (2) that it violated the “right of privacy” provisions in the Montana Constitution.
Both the Federal and State Constitutions prohibit unreasonable searches and seizures. Fourth Amendment, U. S. Constitution; Arti *553 cle II, Sec. 11, 1972 Montana Constitution. Both permit searches and seizures under valid search warrants and under certain circumstances without a search warrant. Here the focus of defendant’s attack is not on the search warrant per se, but on the absence of probable cause in the first place to enter defendant’s house without a warrant where the marijuana plants were discovered. Hftattacks both the warrantless entry into his house and the scope of the search in which the discovery was made that formed the basis for issuance of the search warrant.
We hold that the warrantless entry into Zander’s house by deputies Hintz and Crego was proper and justified. A person had been observed under circumstances indicating an attempt at forced entry into the Zander home. Deputy Hintz found the front door unlocked after having been informed that, nobody was home and that the door was always locked when the Zanders were away. The officers at the time of entry were engaged in protecting the Zander property.. This included determining whether any burglars were hiding inside the house. A prudent officer was warranted in believing that a felony had been attempted or committed and in concluding that prompt entry into the house was necessary to protect the property and determine whether the suspect was hiding in the house. State v. Schrag (1975), 21 Or.App. 655, 536 P.2d 461; Henry v. United States (1959), 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134; Draper v. United States (1959), 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.
As the officers’ entry and search for the suspect was lawful, the incidental discovery of the contraband during the course of the search was likewise lawful under the “plain view” doctrine. Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564. It is well settled that an object in plain view of an officer who lawfully is in a position to have that view is subject to seizure. Harris v. United States (1968), 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067. Montana has applied this principle and stated the rule in this language.
“The rule is: Where there is prior justification for the police to *554 search an area,.and in searching the area, they inadvertently find incriminating evidence which they had no reason to anticipate, they may lawfully seize that incriminating evidence.” State v. Gallagher (1973), 162 Mont. 155, 167, 509 P.2d 852, 858.
Here the officers were not searching for drugs but for a suspected burglar. They had no reason to suspect the presence of contraband in the house. Their search was limited to places where the suspect might be hiding. The permissible scope of the search is as broad as is reasonably necessary to prevent the escape of the suspect from the house. Warden v. Hayden (1967), 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782. One of these possible hiding places was the closet where the contraband was discovered in plain view. Following its discovery, they secured a search warrant and seized the evidence. The officers conducted themselves in a laudable, exemplary and thoroughly lawful manner.
The second prong of defendant’s argument that an unlawful search and seizure occurred is based on the “right of privacy” contained in the 1972 Montana Constitution. The gist of defendant’s contention is that there was no compelling state interest justifying the invasion of a private home to criminalize the growing of a marijuana plant by an adult. Defendant cites the expert opinion evidence of Clarence C. Gordon, Professor of Botany at the University of Montana, and John P. Daniels M.D., a physician in Arlee, Montana to the effect that a marijuana plant constitutes no risk or hazard to health. Also cited is an affidavit of Dr. Thomas Ungerleider concerning recent studies of marijuana and why the present state of scientific knowledge has discredited its harmful effects. This affidavit was not presented to the District Court in this case but was taken from another District Court case in the ninth judicial district and first injected into this case in relator’s brief to this Court.
We do not reach a determination of whether the cultivation or use of marijuana is or should be criminalized. This is patently a matter of state law to be determined by the legislature. The legislature has determined this by enactment of statutes making sale or *555 posession of marijuana a criminal offense. Sections 54-132 and 54-133, R.C.M.1947, now sections 45-9-101 and 45-9-102 MCA. This Court will not intrude on this legislative prerogative under the questionable theory that there is no evidence or policy basis for the statutes and that the legislature had no rational or reasonable basis for enacting them.
The remainder of Zander’s contention is that there is no compelling state interest justifying intrusion into a private home to prevent an adult occupant from growing a marijuana plant, citing the “right of privacy” provision in Montana’s Constitution.
Our Constitution provides: '
“The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.” Art.II, Sec. 10, 1972 Montana Constitution.
We have no quarrel with this constitutional provision nor with the various authorities cited by relator and amicus American Civil Liberties Union for the pronouncement that a person has the valued and fundamental right to be let alone, free from governmental intrusion; Olmstead v. United States (1928), 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944; or that a man’s home is his castle and the right of privacy there is a part of the constitutional guarantee of liberty and the pursuit of happiness. State v. Brecht (1971), 157 Mont. 264, 485 P.2d 47; Welsh v. Pritchard (1952), 125 Mont. 517, 241 P.2d 816. We have also examined the other authorities cited by both parties and amici: Boyd v. United States {1886), 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; State v. Sawyer (1977), 174 Mont. 512, 571 P.2d 1131; Ravin v. State (1975), Alaska, 537 P.2d 494; State v. Bobey (1978), 176 Mont. 298, 577 P.2d 1226; State v. Murphy (1977), 117 Ariz. 57, 570 P.2d 1070; and the other authorities cited in the briefs too numerous to mention here.
From these cases and our constitutional language certain principles of law emerge. The right of individual privacy is a fundamental constitutional right expressly recognized as essential to the well-being of our society. The constitutional guarantee of indi *556 vidual privacy is not absolute. It must be interpreted, construed and applied in the light of other constitutional guarantees and not in isolation. The right of individual privacy must yield to a compelling state interest. Such compelling state interest exists where the state enforces its criminal laws for the benefit and protection of other fundamental rights of its citizens.
The compelling state interest in this case lies in the protection of a citizen’s home and its contents from unlawful intrusion. Relator’s argument that the compelling state interest must be found in statutes prohibiting the cultivation and sale of marijuana is nonsense. The officers’ intrusion here was purely and simply to protect the home and its contents including discovery and apprehension of the suspect. The purpose of the intrusion had nothing to do with enforcement of marijuana laws.
Protection of a person’s property is an inalienable right guaranteed by our Constitution. Art. .II, Sec. 3, 1972 Montana Constitution. This constitutional protection furnishes the compelling state interest to which the right of individual privacy must yield in this case.
Accordingly we hold that the District Court was correct in denying dismissal of the charge against defendant for violation of constitutional prohibitions against unreasonable searches and seizures and the right of privacy.
Zander next contends that the statute prohibiting the cultivation of marijuana plants denied him equal protection of the laws under Art. II, Sec. 4 of the 1972 Montana Constitution. He argues that cultivation of tobacco is equally as harmful as cultivation of marijuana and that because no criminal sanctions are placed on tobacco cultivation while criminal statutes prohibit marijuana cultivation, he is denied equal protection of the laws.
Criminal statutes need not apply to all areas that may be injurious to public health and failure of [he legislature to do so does not constitute denial of equal protection of the laws. Ravin v. State (1975), Alaska, 537 P.2d 494. Determination or classification of the subjects of legislation does not deny equal protection. State v. *557 Mitchell (1978), Mo., 563 S.W.2d 18; State v. Kells (1977), 199 Neb. 374, 259 N.W.2d 19. If all persons in the same class are treated alike, there is no violation of equal protection. Hart Refineries v. Harmon (1928), 81 Mont. 423, 263 P. 687., aff'd. 278 U.S. 499, 49 S.Ct. 188, 73 L.Ed. 475. Here there is but one class and all persons within that class are treated equally satisfying constitutional equal protection requirements.
Finally relator contends that section 54-132. R.C.M. 1947, now section 45-9-101 MCA, violates the due process guarantee in Montana’s Constitution by creating an arbitrary presumption that cultivation of marijuana constitutes a sale of marijuana. The state responds that this issue was decided adversely to relator in State ex rel. LeMieux v. District Court (1975), 166 Mont. 115, 531 P.2d 665, appeal dismissed, sub nom., District Court of Fifth Judicial District of Montana v. Montana ex rel. LeMieux, 442 U.S. 1030, 95 S.Ct. 2647, 45 L.Ed.2d 687.
We agree that our holding in LeMieux ruled the statute in question constitutional against relator’s attack here. However, we wish to re-examine our ruling in LeMieux prior to any trial in this case and accordingly have granted review by supervisory control for that purpose.
LeMieux was a 3-2 decision reversing the ruling of the district judge that the statute was unconstitutional. Two members of .the majority are no longer on the Court. The third member of the majority on the LeMieux court has expressed a desire to re-examine and review the LeMieux ruling. We proceed.
The statute in question provides in pertinent part:
A person commits the offense of a criminal sale of dangerous drugs if he . . . cultivates ... any dangerous drug, as defined in [this act].” Sec. 54-132, R.C.M. 1947, now section 45-9-101 MCA.
Marijuana and marijuana plants are defined as dangerous drugs elsewhere in the Controlled Substances Act, sections 54-301 and 54-305, R.C.M. 1947, now sections 50-32-101 and 50-32-222 MCA. The majority held in LeMieux that the statute was constitutional because the legislature simply broadly defined “sale”, did *558 not create a presumption of “sale” from cultivation, and because the legislature could have prohibited the cultivation of marijuana by separate statute it did not overstep its power in including cultivation within the definition of “sale” in the act.
On re-examination it becomes clear that the legislature did create a conclusive and irrebuttable presumption of “sale” of marijuana from cultivation thereof. The language of the statute is clear and unambiguous. It plainly states that a person commits a criminal sale of marijuana if he cultivates it. The intention of the legislature must first be determined from the plain meaning of the words used and if the meaning of the statute can be so determined, the courts may not go further and apply any other means of interpretation. Dunaphy v. Anaconda Company (1968), 151 Mont. 76, 438 P.2d 660; Haker v. Southwestern Ry. Co. (1978), 176 Mont. 364, 578 P.2d 724. When the language of the statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing for the Court to construe. Dunaphy v. Anaconda Company, supra; Jones v. Judge (1978), 176 Mont. 251, 577 P.2d 846. The function of the Court is simply to ascertain and declare what in terms or in substance is contained in the statute. Section 93-401-15, R.C.M.1947, now section 1-2-101 MCA. Applying these rules we now hold that section 54-132, R.C.M.1947, now section 45-9-101 MCA, creates a conclusive presumption of a criminal sale of marijuana from its cultivation.
The test of the constitutionality of such a statutory presumption has been determined by the United States Supreme Court:
“Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed; if the inference of one from proof of the other is arbitrary because of lack of connection between the two in common experience.” Tot v. United States (1943), 319 U.S. 463, 467-468, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519, 1524.
A later U. S. Supreme Court decision further defined the test:
“The upshot of Tot, Gainey and Romano is, we think, that a criminal statutory presumption must be regarded as ‘irrational’ or *559 ‘arbitrary,’ and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.” Leary v. U. S. (1969), 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57, 82.
We apply this test to the statute in question. We conclude that the fact proved (cultivation of marijuana) bears no rational connection with the fact presumed (sale of marijuana). Marijuana cultivators are not ipso facto marijuana sellers. Common experience indicates that many marijuana users cultivate the plant for their own use, particularly where, as here, small amounts are cultivated within the confines of one’s closet. We cannot say with substantial assurance that such cultivating is more likely than not to result in a sale. A conclusive statutory presumption that a marijuana cultivator is a marijuana seller is purely arbitrary. It precludes proof to the contrary. If offends the “due process” clause of our State Constitution. Art. II, Section 17, 1972 Montana Constitution.
Accordingly we hold that part of section 54-132, R.C.M. 1947, now section 45-9-101 MCA providing that a person commits a criminal sale of dangerous drugs if he cultivates marijuana is unconstitutional on its face. This ruling does not apply to nor affect section 54-133, R.C.M. 1947, now section 45-9-102 MCA, governing the offense of possession of marijuana.
Dismissal of the charge of a criminal sale of dangerous drugs against relator Zander in the District Court of Missoula County is granted.
MR. JUSTICES DALY, HARRISON and SHEEHY concur.