**Vern Loren BELL, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 83–262.**

Supreme Court of Wyoming.

Jan. 18, 1985.

Leonard D. Munker, State Public Defender, Sylvia Lee Hackl, Appellate Counsel, and David E. Erickson, Asst. Public Defender, Wyoming Public Defender Program for appellant; oral argument by Mr. Erickson.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Senior Asst. Atty. Gen., and Michael A. Blonigen, Asst. Atty. Gen., for appellee; oral argument by Blonigen.

Before THOMAS *, C.J., and ROSE, ROONEY **, BROWN, and CARDINE, JJ.

CARDINE, Justice.

Appellant Vern Loren Bell appeals from the habitual criminal enhanced penalty imposed following his conviction of involuntary manslaughter. We affirm.

Appellant's wife was badly beaten on July 15, 1983. She subsequently died from these injuries. Appellant was charged with and convicted of involuntary manslaughter and his sentence was enhanced upon his being found an habitual criminal. He is not appealing his involuntary manslaughter conviction. Appellant contends only that the enhanced penalty, provided by the habitual criminal statute § 6–10–201, ante, is a violation of constitutional guarantees of equal protection and, therefore, is unconstitutional.

The crime of involuntary manslaughter is found in § 6–2–105(a)(ii)(A), W.S.1977, which provides:

* Became Chief Justice January 1, 1985.

"(a) A person is guilty of manslaughter if he unlawfully kills any human being without malice, expressed or implied * * *:

\*   \*   \*   \*   \*   \*

"(ii) Involuntarily, but:
"(A) In the commission of some unlawful act except as provided in W.S. 6–2–106 * * *."

The provision for penalty enhancement is found in § 6–10–201, W.S.1977, which is as follows:

"(a) A person is an habitual criminal if:
"(i) He is convicted of a *violent felony;* and
"(ii) He has been convicted of a felony on two (2) or more previous charges separately brought and tried which arose out of separate occurrences in this state or elsewhere.
"(b) An habitual criminal shall be punished by imprisonment for:
"(i) Not less than ten (10) years nor more than fifty (50) years, if he has two (2) previous convictions;
"(ii) Life, if he has three (3) or more previous convictions." (Emphasis added.)

The underlying conviction for an enhanced penalty under the habitual criminal statute must be a *violent felony* which is defined by § 6–1–104(a)(xii), W.S.1977, as:

" 'Violent felony' means murder, manslaughter, kidnapping, sexual assault in the first or second degree, robbery, aggravated assault, aircraft hijacking, arson in the first or second degree or aggravated burglary."

Section 6–2–106(b), W.S.1977, Cum.Supp. 1984, aggravated vehicular homicide, not included as a violent felony for sentence enhancement purposes, provides as follows:

"A person is guilty of aggravated homicide by vehicle and shall be punished by imprisonment in the penitentiary for not more than twenty (20) years, if, while driving a motor vehicle in violation of W.S. 31–5–233, he unlawfully causes the death of another person and the violation is the proximate cause of the death."

** Chief Justice at time of oral argument.

Section 31–5–233, W.S.1977, makes it unlawful to operate a motor vehicle while under the influence of intoxicating liquor or any controlled substance to a degree which renders the operator incapable of safely driving the vehicle.

The question we are presented is whether our habitual criminal statute, § 6–10–201, supra, violates equal protection and is therefore unconstitutional because it includes manslaughter within the definition of violent felonies but does not include aggravated vehicular homicide.

Appellant is not contending that the legislature is without power to prescribe punishment for criminal offenses. *Evans v. State,* Wyo., 655 P.2d 1214, 1223 (1982). Nor is he challenging the constitutionality of habitual criminal statutes. *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); *Moore v. Missouri,* 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301 (1895).

█ Equal protection guarantees that similar people will be dealt with similarly and that people in different circumstances will not be treated as though they were similar. Nowak, Rotunda and Young, Constitutional Law (2nd ed. 1983), p. 587.

"Under our constitutional system the States in determining the reach and scope of particular legislation need not provide 'abstract symmetry'. [Citation.] They may mark and set apart the classes and types of problems according to the needs and as dictated or suggested by experience. * * * [T]he equal protection clause does not prevent the legislature from recognizing 'degrees of evil' * * *." *Skinner v. State of Oklahoma ex rel. Williamson,* 316 U.S. 535, 62 S.Ct. 1110, 1112–1113, 86 L.Ed. 1655 (1942).

There must be some difference which furnishes a reasonable basis for different legislation pertaining to different classes. *United States Steel Corporation v. Wyoming Environmental Quality Council,* Wyo., 575 P.2d 749 (1978). The differences involved must not be arbitrary and without a just relation to the matter being legislated. *Mountain Fuel Supply Company v. Emerson,* Wyo., 578 P.2d 1351 (1978).

"The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. [Citation.] Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

█ Legislative burdens which are underinclusive are not reviewed as strictly by the court as overinclusive statutes because the people who are burdened by the classification are properly identified. Nowak, Rotunda and Young, supra, p. 589. Appellate courts

" * * * should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion the trial courts possess in sentencing convicted criminals." *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

█ Equal protection does not require exact equality. Only discrimination which is arbitrary and invidious is prohibited. *State v. Laude,* Wyo., 654 P.2d 1223 (1982); *Cavanagh v. State,* Wyo., 505 P.2d 311 (1973). Acts which have a greater social impact and graver consequences may have more severe penalties. *People v. Thatcher,* Colo., 638 P.2d 760 (1981). The State has a legitimate interest in discouraging specific evils which are believed to be of greater social consequences. *People v. Hulse,* 192 Colo. 302, 557 P.2d 1205 (1976).

"Normally, the widest discretion is allowed the legislative judgment in determining whether to attack some, rather than all, of the manifestations of the evil aimed at; and normally that judgment is given the benefit of every conceivable circumstance which might suffice to characterize the classification as reasonable rather than arbitrary and invidious."

*McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964).

The legislature included involuntary manslaughter within the definition of a violent felony. A death occurring during the commission of an unlawful act, therefore, can, by enhancement, result in a punishment of life imprisonment. The legislature did not include as a violent felony death resulting from the operation of a motor vehicle driven while under the influence of an intoxicating liquor. The statute is underinclusive and, if there is a reasonable basis for this exclusion, it will be upheld.

■ The purpose of the habitual criminal statute is to remove from society repeat offenders who commit a violent felony. An automobile driver who becomes involved in an accident resulting in death as a result of the driver's intoxication is guilty of a felony. The driver is not, however, guilty of the kind of violent felony the legislature has classified as necessary to sentence enhancement pursuant to the habitual criminal statute. The automobile is an integral part of our society. It is thought of as a necessity; and it may be so. We are licensed to drive in our teens and continue driving most of our lives. Drinking alcoholic beverages, at least socially, is unfortunately also a common occurrence. These activities involve a large segment of the generally law-abiding community who are not repeat offenders, and when an accident and death occurs while operating a motor vehicle, it is appropriate to classify the offense differently from the enumerated violent felonies. Legislative classifications will be upheld as long as the differences are reasonably related to the objects or the persons dealt with and to the public purpose sought to be achieved by the legislation. *People v. Marcy,* Colo., 628 P.2d 69 (1981); *People v. Taggart,* Colo., 621 P.2d 1375 (1981). The classification in this case is reasonable and does not offend due process.

■ Statutes carry a presumption of constitutionality. *Carfield v. State,* Wyo., 649 P.2d 865 (1982); *Sorenson v. State,* Wyo., 604 P.2d 1031 (1979). All reasonable doubts are resolved in favor of constitutionality. *Nimmo v. State,* Wyo., 603 P.2d 386 (1979). The alleged unconstitutionality must be shown clearly and exactly beyond a reasonable doubt. *Nickelson v. People,* Wyo., 607 P.2d 904 (1980).

Other jurisdictions have looked at the question of equal protection as it applies to criminal offenses. *State ex rel. Zander v. District Court of Fourth Judicial District in and for Missoula County,* 180 Mont. 548, 591 P.2d 656 (1979), held that to criminalize the growing of marijuana did not violate equal protection even though it was not a crime to cultivate tobacco. They stated that criminal statutes need not apply to all areas that might be injurious to public health and that the failure to do so was, therefore, not a violation of equal protection. Arizona answered the question of whether classifying a nonviolent burglary as a crime of violence under the habitual criminal statute violated equal protection in *State v. Harmon,* 25 Ariz.App. 137, 541 P.2d 600 (1975), cert. denied 425 U.S. 942, 96 S.Ct. 1681, 48 L.Ed.2d 185 (1976). The court held that in a burglary the possibility of confrontation and violence is possible and the contention was, therefore, without merit. *State v. Freitas,* 61 Hawaii 262, 602 P.2d 914 (1979), dealt with a question similar to the one at bar. Appellant contended in that case that equal protection was violated because the habitual criminal statute was overinclusive and also underinclusive in including burglary but excluding other violent acts. The court stated, "[a] statute does not violate the equal protection clause merely because it could have included other persons, objects, or conduct within its reach," holding that it was for the legislature to determine which crimes were more serious and to provide for a more severe punishment for the offenses considered to impose the greatest danger.

■ The general rules of equal protection as applied to this situation preclude a finding of unconstitutionality. The classification of manslaughter as a violent felony and the exclusion of aggravated vehicular homicide within the definition of violent

crimes are reasonable and related to a legitimate state interest. There is a rational basis for enhancing the punishment of one who kills during the commission of an unlawful act with a past history of repeated felony convictions. There is also a rational basis for excluding one who negligently becomes intoxicated and, in the act of driving a motor vehicle, kills another.

The legislature could have included other crimes in the definition of "violent crimes"; however, they chose not to do so. Appellant administered a violent beating on his wife; she died as a result. It is obvious that the crime for which he was convicted was properly included in the definition of violent felony. It is for the legislature to determine the various classes of offenses and the severity of punishment. The fact that aggravated vehicular homicide could have been included in the habitual criminal statute does not render the statute unconstitutional. The State has a valid interest in punishing those who have shown themselves to be unable to live with the mores and restrictions of society; the State also had an interest in defining those offenses which should be enhanced, and we cannot say that excluding death resulting from operation of a motor vehicle was unreasonable, arbitrary or invidious. The State can provide a more severe penalty for acts which are believed to be of a greater social consequence. *People v. Czajkowski*, 193 Colo. 352, 568 P.2d 23 (1977). The classification being reasonable and not arbitrary nor invidious, the decision of the trial court is affirmed.

THOMAS, Chief Justice, specially concurring.

I have no fundamental disagreement with the justification for affirming this judgment and sentence articulated in the majority opinion. Because of my views set forth in *State v. Sodergren*, Wyo., 686 P.2d 521 (1984), I identify some additional reasons for affirming the district court.

As I read §§ 6-2-105 and 6-2-106, W.S. 1977 (June 1983 Rev.), together with the definitions found in § 6-1-104(a)(iii) and (ix), the statutory distinctions upon which I based my position in *State v. Sodergren, supra,* were carried forward into the 1983 criminal code. I therefore would hold that those homicides which involve the use of a motor vehicle but also constitute the killing of a human being recklessly still may be prosecuted as involuntary manslaughters. As far as I am concerned then Bell's claim of disparate treatment vanishes because those homicide cases which involve an automobile but which are prosecutable under the manslaughter statute become violent felonies subject to the invocation of the habitual criminal sanctions.

As to those homicides involving the use of a motor vehicle which cannot be charged as homicides committed involuntarily but recklessly, the elements of proof are not exactly the same and consequently, contrary to Bell's claim, the statutes do not proscribe substantially the same conduct. See *Bell v. State*, Alaska, 598 P.2d 908 (1979); and *State v. Modica*, 58 Hawaii 249, 567 P.2d 420 (1977). I recognize that in his argument Bell here focuses upon the aggravated negligent homicide section of our 1983 Criminal Code. It should be borne in mind, however, that aggravated vehicular homicide is simply a degree of vehicular homicide, and if vehicular homicide is distinguishable from manslaughter it follows that aggravated vehicular homicide is distinguishable for the same reasons. The increased sanction for aggravated vehicular homicide is based upon a matter of degree which the legislature is entitled to classify differently.

For these additional reasons I would affirm the judgment of the district court in this case.