Ron PATTERSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

July 8, 1977.

Discretionary Review Denied Nov. 14, 1977.

Dale B. Mitchell, Mitchell & Gillum, Somerset, for appellant.

Robert F. Stephens, Atty. Gen. by James L. Dickinson, Asst. Atty. Gen., Frankfort, for appellee.

Before HAYES, HOWARD and WINTERSHEIMER, JJ.

HAYES, Judge.

This is an appeal wherein the appellant, Patterson, attacks the constitutionality of the "cold check" statute, KRS 514.040.

Ron Patterson, a thirty-six (36) year old Baptist minister, had a part-time job selling handcrafted leather goods to retail outlets. While selling his leather wares, Patterson became acquainted with one John Rankin of Rankin & Grider, Inc., importers and exporters of leather products with offices in Nicholasville, Kentucky. Patterson sold Rankin some watch bands and Rankin told Patterson he could sell him some leather ponchos at a low price. As a result, Patterson on October 9, 1975, ordered from Rankin a large quantity of ponchos. The sale amounted to $2,955.04 for which Patterson gave his check, No. 113. At this time, Rankin and Patterson discussed Rankin ordering some $10,000.00 worth of leather goods for Patterson at a substantial discount to Patterson. Check No. 113 was deposited by Rankin in his bank on October 10, 1975, and on October 17th the check was returned by the drawee bank, First and Farmers National Bank of Somerset, Kentucky, with a slip explaining that there were insufficient funds in the account of the drawer, Patterson, to cover the check. On the same date Rankin told Patterson that "the check had come back insufficient funds and he told me to run it back through again". On October 18th Rankin ran the check through the bank again. The check "bounced" again for insufficient funds. The check was returned to Rankin on October 24th. From this point the testimony is in conflict on whether the $1,000.00 money order received by Rankin from Patterson on October 28th and an additional $400.00 money order received by Rankin from Patterson on November 6, 1975, were in part payment for check No. 113 or on open account for the later ordered goods in the amount of $7,000.00 In any case, Rankin, after discussing the "cold check" No. 113 with Patterson some eighteen (18) times, filed suit in Jessamine Circuit Court. An arrest order was issued and Patterson was indicted for violation of KRS 514.040. Upon trial by a jury, appellant was found guilty and sentenced to one (1) year in the penitentiary.

The applicable Kentucky Penal Code provision is found in KRS 514.040, which is as follows:

(1) A person is guilty of theft by deception when he obtains property of another by deception with intent to deprive him thereof. A person deceives when he intentionally:

\* \* \* \* \* \*

(e) Issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee.

\* \* \* \* \* \*

(4) For purposes of subsection (1), an issuer of a check or similar sight order for the payment of money is presumed to know that the check or order, other than a postdated check or order, would not be paid if:

\* \* \* \* \* \*

(b) Payment was refused by the drawee for lack of funds, upon presentation within thirty (30) days after issue, and the issuer failed to make good within ten (10) days after receiving notice of that refusal.

The net result of the "cold check" statute is that the knowledge required by subsec-

tion (e) is imputed to the issuer of the check if he does not make the check good within ten (10) days after he learns the check has been dishonored. This imputed knowledge in turn meets the requirements of subsection (1) concerning "intent to deprive".

■ Patterson contends that this rebuttable presumption is "irrational and arbitrary" and therefore unconstitutional as a violation of the 14th Amendment of the U.S. Constitution. This is a case of first impression in Kentucky.

In determining whether or not a criminal statute making one fact presumptive or prima facie evidence of another fact satisfies the due process requirements of the 14th Amendment to the U.S. Constitution, certain standards have been established by the U.S. Supreme Court:

(1) There must be a rational connection between the fact proved and the ultimate fact presumed, *U.S. v. Gainey*, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965).

(2) An inference is "irrational" or "arbitrary" and hence unconstitutional unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend, *Leary v. U.S.*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

(3) The evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt. This is the most stringent test, *Barnes v. U.S.*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

Mr. Justice Powell, delivering the opinion of the court in *Barnes v. U.S., supra*, stated:

To the extent that the "rational connection," "more likely than not," and "reasonable doubt" standards bear ambiguous relationships to one another, the ambiguity is traceable in large part to variations in language and focus rather than to differences of substance. What has been established by the cases, however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasona-

ble-doubt standard . . . as well as the more-likely-than-not standard, then it clearly accords with due process.

As noted in 35 *A.L.R.* 375, 43 *A.L.R.* 49 and 95 *A.L.R.* 486 most state statutes on worthless checks require the intent to defraud as an essential element. These statutes commonly contain the "prima facie" presumption or inference provision of intent to defraud. Of course these are rebuttable presumptions and conviction will not be had where the accused can satisfactorily explain otherwise. In other words, the statutes generally do not create conclusive presumptions which normally are held unconstitutional because such are within the sole province of the jury.

In interpreting a Kansas Statute very much like the Kentucky Statute, the court stated in *State v. Haremza*, 213 Kan. 201, 515 P.2d 1217 (1973):

One of the well-recognized presumptions of law is that a person intends all the natural and probable consequences of his voluntary acts. Where a person has written an insufficient funds check and receives property or other consideration therefor from the payee of the check, and further, where the maker of the check has been notified that the check has not been paid and fails to make payment within seven days after such notice, we find that there is nothing unreasonable or arbitrary in making such fact prima facie evidence of fraudulent intent or guilty knowledge. . . . The notice provision gives to the drawer of the check a final opportunity in which to make the check good and is peculiarly for his benefit. In a worthless check case it is obviously the defendant who has the more convenient access to evidence relating to his intent and knowledge. These are matters within his own head and usually are not within the knowledge of the prosecutor.

The legislature of this Commonwealth created the "cold check" statute in such a manner that proof of one fact (failure to cover the check within ten (10) days after due notice) is prima facie evidence of anoth-

er fact (criminal intent to deceive) essential to the guilt of the accused. The verdict still must rest upon all the evidence which must establish his guilt beyond a reasonable doubt.

Since the inference satisfied the reasonable doubt standard, and the "more-likely-than-not" standard, we conclude as the U.S. Supreme Court did in *Barnes, supra* and the Kansas Supreme Court did in *Haremza, supra* that this satisfies the requirements of due process.

■ The appellant in his brief states that to uphold his conviction would be the same as imprisoning him for a debt which is a violation of the Kentucky Constitution. We believe that the worthless check statute does not punish one for a debt but rather for a fraudulent act. Since intent to defraud is an essential element, it is not in violation of Section 18 of the Kentucky Constitution prohibiting imprisonment for debt.

■ The appellant's contention that the evidence was insufficient as a matter of law to sustain a conviction is clearly refuted by the record since there was an abundance of evidence to convict. And in light of all the evidence, the fact that the trial court erred in admitting evidence that Rankin borrowed money in order to buy the leather ponchos and in turn sell them to Patterson, was not harmful or prejudicial beyond a reasonable doubt.

The judgment is affirmed.

All concur.