Wayne RICE, et al., Movants,

v.

COMMONWEALTH of Kentucky, Respondent.

Supreme Court of Kentucky.

July 7, 1981.

Rehearing Denied Sept. 22, 1981.

Bob Fay, Charles M. Chaney, Paducah, for movants.

Steven L. Beshear, Atty. Gen., Carl Miller, Asst. Atty. Gen., Frankfort, for respondent.

STERNBERG, Justice.

Wayne Rice was indicted for five counts of theft by deception, in violation of KRS 514.040(1)(e). The Rice Seed Company, Inc., a corporation, of which Wayne Rice is the principal shareholder and operator, was indicted pursuant to the offense of corporate liability under KRS 502.050. Both were found guilty as charged. Wayne was sentenced to one year on each of the five counts, each to be served consecutively. The corporation was fined $5,000. On appeal to the Court of Appeals of Kentucky, the judgments of the circuit court were affirmed. This court granted review on February 12, 1981, 613 S.W.2d 136. We reverse.

KRS 514.040(1)(e) is as follows:

"Theft by deception.—(1) a person is guilty of theft by deception when he obtains property of another by deception with intent to deprive him thereof. A person deceives when he intentionally:

. . . .

(e) Issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee."

KRS 502.050 is as follows:

"Corporate liability.—(1) A corporation is guilty of an offense when:

(a) The conduct constituting the offense consists of a failure to discharge a specific duty imposed upon corporations by law; or

(b) The conduct constituting the offense is engaged in, authorized, commanded or wantonly tolerated by the board of directors or by a high managerial agent acting within the scope of his employment in behalf of the corporation; or

(c) The conduct constituting the offense is engaged in by an agent of the corporation acting within the scope of his employment and in behalf of the corporation and:

1. The offense is a misdemeanor or violation; or

2. The offense is one defined by a statute which clearly indicates a legislative intent to impose such criminal liability on a corporation.

(2) As used in this section:

(a) 'Agent' means any officer, director, servant or employe of the corporation or any other person authorized to act in behalf of the corporation.

(b) 'High managerial agent' means an officer of a corporation or any other agent of a corporation who has duties of such responsibility that his conduct reasonably may be assumed to represent the policy of the corporation.

Two issues are presented. They are:

1. Did the trial court err in not directing a verdict of not guilty because the evidence was insufficient to sustain a guilty verdict?

2. Did the trial court err in allowing the Commonwealth to introduce into evidence the bank records of movants?

Each of the five counts against movant Wayne Rice and the one count against the Rice Seed Company, Inc., except for dates and names, charge that, "On or about the __ day of _____, 19__, in McCracken County, Kentucky, the above named defendant committed theft by obtaining from _____ a quantity of soybeans, of the value of $100 or more, in return for a worthless check drawn by the defendant on the Citizens Bank and Trust Company, of Paducah, Kentucky, against the peace and dignity of the Commonwealth of Kentucky.

After the harvest of soybeans, they would be commonly disposed of in one or more ways. They would be sold to Rice Seed Company for a fixed sum per bushel, or they would be taken to the company where they would be cleaned and stored for future use. Sometimes all of the beans

would be recleaned for planting, or a part would be recleaned for planting, and the remaining would be sold on the open market. In other circumstances, all of the beans, after cleaning and packaging, would be sold.

### Michael Shelton

In the instant case, movants purchased 1200 bushels of beans from Michael Shelton for $8.00 per bushel. One truckload of beans was delivered each day for four days, beginning on April 25, 1978. When all of the beans had been delivered (Friday, April 28, 1978), Michael's mother, Mary Jo Shelton, who drove the truck making the deliveries, went to the company's office to get the check for the sale of the beans. Wayne Rice was absent, so Pam Meier, a secretary of the Rice Seed Company, made out a check payable to Michael Shelton for $10,051.92, but postdated the check to May 1, 1978. While Mary Jo was in the office, she talked with Wayne Rice on the telephone and, at his request, agreed to hold the check until May 1, 1978, which was the following Monday, before presenting it to the bank for payment. On May 1, 1978, Shelton's father presented the check to the bank and payment was refused. On June 1, 1978, Wayne Rice paid Shelton the sum of $1800.00 as a credit on the postdated check, leaving a balance due and unpaid of $8,251.92.

### Hubert Hamilton—Kenneth Hamilton

Hubert Hamilton is a retired farmer and his nephew, Kenneth Hamilton, operates his farm on shares. Kenneth also looks after the sale of the crops, not only for himself but for his uncle. In October and November, 1977, Kenneth delivered some soybeans grown on the Hubert Hamilton farm to Wayne Rice for the purposes of storage and sale at a time to be selected by Kenneth. On June 16, 1978, Kenneth directed the beans to be sold at the current market price of $6.84 per bushel. Thereupon, Wayne Rice issued two checks for the beans, one to Hubert for $6883.61 and one to Kenneth for $17,840.44. Both checks, although issued on June 16, 1978, were postdated to June 26, 1978. At the time the checks were issued Rice asked Kenneth to hold the checks until June 26, which Kenneth agreed to do, knowing that at that time Rice could not pay him and actually wanted to wait on payment until the beans were sold. Rice paid Kenneth and his uncle, Hubert, interest on the sale price for the delay in settling for the beans. Rice gave both Kenneth and his uncle promissory notes secured by a real estate mortgage to secure payment of the indebtedness.

### Larry Halter

Larry Halter is a farmer, seed processor, and warehouseman. On May 23, 1978, Halter purchased some soybeans from a seed dealer in Sikeston, Missouri, and on the same date turned around and sold the soybeans to Wayne Rice on the telephone. Rice then went to Missouri, picked up the beans, and returned with them to Kevil, Kentucky. Twenty days thereafter, Halter sent an invoice to movants requesting payment for the beans. Payment was not made. Shortly thereafter, Halter sent a second invoice; still no payment was made. On August 10, 1978, Halter personally confronted Rice with the demand for payment. Thereupon, Rice gave Halter a check for $1127.00 postdated to August 14, 1978. Halter agreed to and did hold the check until August 14, 1978, before presenting it to the bank for payment. When so presented, payment was refused.

### R. A. Cash

In October or November, 1977, R. A. Cash delivered some soybeans to Rice for cleaning and selling. In April, 1978, Cash withdrew enough beans for his planting and left the remainder of his beans (approximately 790 bushels) for sale. On July 14, 1978, Rice gave Cash a check for the sum of $3757.48 and postdated it to August 1, 1978. Rice requested Cash to hold the check until

**914**

August 1, 1978, before presenting it to the bank for payment. Cash agreed and did not present the check until the designated time. When presented, payment was refused.

At the conclusion of the Commonwealth's evidence, counsel for movants sought to have the charges in the indictment dismissed, arguing that "If he got those goods, then they have to prove that he didn't intend to pay for them when he got them, and there isn't any evidence on that." The motion was denied. At the conclusion of all the evidence, counsel for movants renewed his motion to dismiss, which the court again denied.

■ The court predicated its instructions to the jury on Rice's intent to defraud existing at the time of the issuance of the checks rather than Rice's intent to defraud existing at the time the beans were received. In this respect the court erred. The instructions should have been couched so as to reflect the intent to defraud to exist at the time the beans were received.

In discussing KRS 514.040, the commentary, after dealing with the cold check law as it existed in Kentucky prior to the effective date of KRS 514.040, went on to say:

" 'Simultaneous consideration' is not necessary under KRS 514.040 in order to create the offense of theft by deception. The purpose or intent of the person at the time property was obtained governs instead of at the time the check was given."

In the case at bar, the intent of Rice at the time he received the beans was not used by the trial judge as the polar star in his instructions to the jury.

■ Counsel for the Commonwealth cites *Patterson v. Commonwealth*, Ky.App., 556 S.W.2d 909 (1977), as determinative of the issue. *Patterson* correctly enunciates the law as far as it goes, but its facts differ from the facts in the case at bar. In *Patterson* the check, payment of which was refused by the bank, was dated and signed

at the same time the merchandise was ordered; it was not issued at a later date or postdated as in the case at bar. Furthermore, *Patterson* imputes the knowledge required under KRS 514.040(1)(e) by the use of KRS 514.040(4)(b). However, KRS 514.040(1) excludes "a postdated check or order." Consequently, in the subject action where the checks are all postdated, the knowledge requirement of KRS 514.040(1)(e) cannot be imputed or supplied by the use of KRS 514.040(4)(b). The substance of what we are holding is that Rice's intent must be determined as of the time the soybeans were received by him. Intent to defraud, in view of the checks being postdated, cannot be imputed to him.

■ The instructions to the jury on the charge of corporate liability must be justified on an intent to defraud existing at the time Rice received the beans. Not having done so, the conviction against the corporation cannot stand, but must fall with the conviction of Wayne Rice personally.

We next turn our attention to the issue of whether the trial judge erred in permitting the Commonwealth to introduce into evidence movants' bank records. In view of the disposition that is being made of this appeal, we do not reach this issue.

The decision of the Court of Appeals is reversed, and this cause is remanded to the McCracken Circuit Court with directions that the indictments against movants be dismissed.

All concur, except CLAYTON, J., who did not sit.