The STATE of Wyoming, Plaintiff,

v.

Gary D. LAUDE, Defendant.

No. 5705.

Supreme Court of Wyoming.

Dec. 7, 1982.

Rehearing Denied Dec. 28, 1982.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Allen C. Johnson, Senior Asst. Atty. Gen. (argued), signed the brief on behalf of plaintiff.

Richard S. Dumbrill, Newcastle, signed the brief and appeared in oral argument on behalf of defendant.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

This matter comes before us on a bill of exceptions[1] brought by the State in which exception is taken to the decision made by the Honorable Paul T. Liamos, Jr., District Judge of the Sixth Judicial District declaring unconstitutional § 6–3–124, et seq., W.S.1977, Cum.Supp.1982. Judge Liamos' decision was made in dismissing a criminal complaint brought against Mr. Gary Laude, for writing an insufficient funds check in violation of § 6–3–124, supra. In that decision, Judge Liamos held:

"1. That W.S.1977 § 6–3–124, et seq., as amended by the Session Laws of 1980, Chapter 18, § 1, violates the Equal Protection Clause, Section One, of the Fourteenth Amendment to the Constitution of the United States of America.

"2. That W.S.1977 § 6–3–124, et seq., as amended by the Session Laws of 1980, Chapter 18, § 1, violates Article I, Section Five of the Constitution of the State of Wyoming, prohibiting imprisonment for debt, except in cases of fraud.

"3. That W.S.1977, § 6–3–124, et seq., as amended by the Session Laws of 1980, Chapter 18, § 1, violates the due process of law clause of Article One of the Fourteenth Amendment to the Constitution of the United States and Article I, Section Six of the Constitution of the State of Wyoming, because the law is too vague and indefinite as to the time when the offense is committed."[2]

The State takes exception to that decision and phrases the issues it would have us consider as follows:

"I. Do Sections 6–3–123, et seq., W.S. 1977, violate the Equal Protection Clause, Section 1, of the Fourteenth Amendment of the U.S. Constitution?

"II. Do Sections 6–3–123, et seq., W.S. 1977, violate Article 1, Section 5, of the Wyoming Constitution, in that they constitute imprisonment for debt for a reason other than fraud?

"III. Do Sections 6–3–123, et seq., W.S. 1977, violate the Due Process Clauses of the Fourteenth Amendment, U.S. Constitution, or of Article 1, Section 6, of the Wyoming Constitution, in that they are too vague and indefinite as to the time when the offense is committed?"[3]

We will sustain the exceptions taken by the State.

The facts can be simply stated. On January 22, 1982, a criminal complaint was filed against Mr. Laude alleging a violation of § 6–3–124, supra. The complaint alleged

---

1. A bill of exceptions was filed in the district court and certified by that court pursuant to § 7–12–102, W.S.1977, Cum.Supp.1982. The attorney general then made application to file a bill of exceptions in this court pursuant to § 7–12–103, W.S.1977, Cum.Supp.1982. Because we were of the opinion that the questions presented by the State should be heard and decided, we granted the State permission to file its bill of exceptions in this court. Section 7–12–104, W.S.1977.

2. Although Judge Liamos declared § 6–3–124, et seq., W.S.1977, Cum.Supp.1982, unconstitutional, it appears that only § 6–3–124, supra, was at issue. Section 6–3–124, supra, provides in pertinent part:

"(a) Any person who deceitfully issues a check which is not paid because the drawer has insufficient funds with the drawee, has issued a fraudulent check and commits fraud by check unless the check is paid by the maker within ten (10) days of receiving notice, sent to the address shown on the instrument of dishonor or nonpayment.

"(b) Fraud by check is:

"(i) A misdemeanor if the fraudulent check was for a sum of less than two hundred dollars ($200.00). * * *

"(ii) A felony if the fraudulent check was for the sum of two hundred dollars ($200.00) or more, or if the offender is convicted of fraud by check involving two (2) or more checks within any sixty (60) day period in the state of Wyoming totaling two hundred dollars ($200.00) or more in the aggregate. * * * "

3. Section 6–3–123, supra, referred to by the State, was not declared unconstitutional by the district court. That section, entitled "Definitions," is, however, the first section of the fraudulent check act of which § 6–3–124, et seq., supra, makes up the remainder thereof.

that on November 23, 1981, Laude issued a $260.50 check (later amended to $260.00) drawn on an account in the Moorcroft State Bank which the bank failed to pay because Laude had insufficient funds with that bank. On April 8, 1982, a motion to dismiss the charges against Laude was filed stating as grounds for dismissal that § 6–3–124, et seq., supra, was unconstitutional. On April 13, 1982, after hearing arguments on the motion to dismiss, Judge Liamos, without written opinion, dismissed the information against Laude and declared the statutes in question unconstitutional as before stated. This appeal followed.

Before we begin a discussion of each issue raised by the State, we feel it appropriate to again set out the standard of review we employ in determining the constitutionality of a legislative enactment. In *Sanchez v. State*, Wyo., 567 P.2d 270, 274 (1977), this court, citing *State v. Stern*, Wyo., 526 P.2d 344, 346–347 (1974), summarized the well-established rules we employ in deciding whether statutes are constitutional:

" ' * * * [T]he plain, ordinary, and usual meaning of words used in a statute controls in the absence of clear statutory provisions to the contrary, [citation]; that where there is plain, unambiguous language used in a statute there is no room for construction, and a court may not properly look for and impose another meaning, [citation]; that where legislative intent is discernible a court should give effect to that intent, [citation]; that every law must be presumed to be constitutional, with all reasonable doubt resolved in its favor, [citation]; and that while generally speaking penal statutes are to be strictly construed, they need not be given overnarrow meaning in disregard of the obvious purpose of the legislative body, [citation].' "

4. Section 1 of the Fourteenth Amendment of the United States Constitution contains both the Equal Protection Clause and the Due Process Clause at issue in this case. That section provides in part:

" * * * No State shall make or enforce any law which shall abridge the privileges or im-

See also, *Thomson v. Wyoming In-Stream Flow Committee*, Wyo., 651 P.2d 778 (1982); *Nickelson v. People*, Wyo., 607 P.2d 904 (1980); and *Washakie County School Dist. No. One v. Herschler*, Wyo., 606 P.2d 310 (1980), cert. denied 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28.

I

We turn now to a discussion of the first issue of whether § 6–3–124, et seq., supra, violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.[4] This court, in discussing the Equal Protection Clause, has held that equal protection does not require exact equality; only arbitrary and invidious discrimination is condemned by the Equal Protection Clause. *Cavanagh v. State*, Wyo., 505 P.2d 311, 312 (1973). The United States Supreme Court has stated that the Equal Protection Clause announces the fundamental principle that states must govern impartially, and that general rules that apply evenhandedly to all persons within a state unquestionably comply with that principle. *Jones v. Helms*, 452 U.S. 412, 423, 101 S.Ct. 2434, 2442, 69 L.Ed.2d 118, 128 (1981). Most recently the Supreme Court, in *Plyler v. Doe*, —— U.S. ——, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), has reviewed its decisions dealing with the Equal Protection Clause and again set out its standards of review:

"The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.' [Citation.] But so too, 'The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.' [Citation.] The initial discretion to determine what is 'different' and what is 'the same' resides in the legislatures of the States. A legislature must have substantial latitude to establish classifications that roughly approximate the na-

munities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

ture of the problem perceived, that accommodate competing concerns both public and private, and that account for limitations on the practical ability of the State to remedy every ill. In applying the Equal Protection Clause to most forms of state action, we thus seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose.

"But we would not be faithful to our obligations under the Fourteenth Amendment if we applied so deferential a standard to every classification. The Equal Protection Clause was intended as a restriction on state legislative action inconsistent with elemental constitutional premises. Thus we have treated as presumptively invidious those classifications that disadvantage a 'suspect class,' or that impinge upon the exercise of a 'fundamental right.' With respect to such classifications, it is appropriate to enforce the mandate of equal protection by requiring the State to demonstrate that its classification has been precisely tailored to serve a compelling governmental interest. In addition, we have recognized that certain forms of legislative classification, while not facially invidious, nonetheless give rise to recurring constitutional difficulties; in these limited circumstances we have sought the assurance that the classification reflects a reasoned judgment consistent with the ideal of equal protection by inquiring whether it may fairly be viewed as furthering a substantial interest of the State. * * *" (Footnotes omitted.)

In his arguments before both the district court and this court, Laude has contended that § 6–3–124, supra, discriminates against indigents as a class in that only indigents cannot pay an insufficient funds check within ten days of receiving notice of dishonor or nonpayment. He then argues that indigents are a suspect class causing us to employ a strict scrutiny standard of review of any statute that discriminates against indigents as a class. We will deal first with whether the statute discriminates.

A classification for purposes of equal protection analysis can be established several ways. Professors Nowak, Rotunda, and Young suggest three different ways. First, a law may establish a classification on its face requiring no proof of the classification other than the language of the statute itself. Second, a law, which on its face shows no impermissible classification, may be impermissibly applied in varying degrees to different identifiable classes of individuals. When application of a law is at issue, proof beyond the language of the law is required to establish the classification that is challenged. Finally, a law that neither classifies on its face nor is applied unevenly may nonetheless be shown by outside proof to in reality constitute "a device designed to impose different burdens on different classes of persons." Nowak, Rotunda, and Young, Constitutional Law, ch. 16 at 527 (1978). The Supreme Court, as far back as *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), recognized that for equal protection purposes impermissible classification can occur either on the face of the statute or in the unequal application of an otherwise valid law. See also, *Sunday Lake Iron Company v. Township of Wakefield,* 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918). From the tenor of the arguments contained in Laude's briefs and from the stage of the proceedings at which the issue was decided below, we conclude that the challenge made here is that § 6–3–124, supra, is invalid on its face. We shall proceed on that basis. We do not know that indigents as a class are unable to pay within the language of the statute. One individual does not constitute a class. The district judge apparently treated the motion similar to a motion for summary judgment, not recognized in the criminal rules. More proof than an affidavit is required to provide an unconstitutional application. The convincing evidence necessary to overcome the presumption of validity is lacking.

We begin our analysis, then, by looking at the plain language of § 6–3–124, supra, and deciding whether it discriminates against indigents as a class. Penal statutes by their

very nature discriminate against those who violate the prohibitions contained therein. Section 6–3–124, supra, on its face, provides that an individual who *deceitfully* issues an insufficient funds check has issued a fraudulent check and has committed fraud by check unless the check is paid by the maker within ten days after receiving notice of dishonor or nonpayment. Not every person that issues an insufficient funds check falls into that category of individuals dealt with in § 6–3–124, supra; an individual must have the mens rea to deceitfully issue an insufficient funds check to be included as an individual dealt with by that section and then that person must have failed to redeem within the prescribed ten-day period. "Deceitfully issues" is the mens rea element of the crime and is defined in § 6–3–123, supra, to mean "a person when at the time he issues a check has the intent to defraud or deceive any other person and obtains from any other person money, property or other thing of value." Nowhere on the face of the statute can we find language that indicates the intent or effect of the statute is to discriminate against indigents as a class.

Laude would have us jump to the conclusion that only indigents cannot redeem or pay an insufficient funds check within ten days of receiving notice of dishonor or nonpayment; therefore, they are singled out as a class for punishment under § 6–3–124, supra. We are unable to reach that conclusion. Section 6–3–124, supra, punishes anyone who deceitfully issues an insufficient funds check and fails to redeem within ten days of receiving notice, be that person indigent or not. The statute is not aimed at punishing indigents as such and does not so provide. In attempting to focus our attention on the redemption language in the statute, Laude ignores the fact that without a "bad check" there could be no crime. His argument, that because he is poor and thus cannot pay to redeem the check, disregards his guilt in issuing a bad check and that he has harmed the individual to whom he issued it. Just because the legislature saw fit to allow a ten-day redemption period does not change the fact

that the statute is aimed at addressing the evil caused by bad checks. The redemption language that Laude complains of was within the province of the legislature to include in the statute and does not facially discriminate against indigents as a class. The statute treats all who fall within its provisions evenhandedly. If anything, the redemption provision confers a benefit on everyone, indigents included, who has written an insufficient funds check, because it allows all who have done so a grace period in which to redeem the check before being subjected to prosecution. An additional defense is specifically provided for those charged, see § 6–3–125, W.S.1977, Cum. Supp.1982, though the fact of prompt repayment would rebut guilty knowledge even without the statutory provision. It could hardly be said that in such instance that an accused made no repayment because he had no funds and therefore was being unconstitutionally abused.

We opine that the legislature within the realm of probability could have reasonably concluded that it was furthering a substantial interest of the state since county attorneys were in all likelihood being used by payees to collect bad checks under threat of prosecution of the maker and possibly refused prosecution if restitution was made. Some prosecutors probably treated the offense as committed regardless of restitution and prosecuted upon complaint being made. The grace period thus makes restitution available to all persons on a uniform basis and more rationally fair for all. The ultimate decision to prosecute, however, still rests with the prosecutor based upon feasibility resting within his or her discretion. The statute has all the appearances of having a reasonable basis which has a natural and not arbitrary relationship to prevention and punishment of fraudulent check writing.

For the foregoing reasons, we hold that § 6–3–124, supra, on its face, does not discriminate against indigents as a class and that the challenged provision was rationally furthering a substantial interest of the state. There is no adequate proof of uncon-

stitutional application. Also, we need not reach Laude's contention that indigents are a suspect class. An indigent has no fundamental constitutional right to defraud another. The criminal is being punished for the fraud rather than the inability to repay his victim. *State v. Leeman,* 119 Ariz. 459, 581 P.2d 693 (1978). We hold, therefore, that § 6–3–124, et seq., supra, does not violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The trial court erred in so holding.

We note at this point that a great number of states have some form or another of a "bad check" statute, and the majority have withstood constitutional challenge. The only such statutes that have failed to pass muster under either equal protection or due process analysis have failed because they did not contain a criminal intent or mens rea to defraud element. Clearly our bad check statute is not lacking in that regard. See, *People v. Abbott,* Colo., 638 P.2d 781 (1981); *State v. Carpenter,* N.D., 301 N.W.2d 106 (1980); *State v. Haremza,* 213 Kan. 201, 515 P.2d 1217 (1973); *People v. Vinnola,* 177 Colo. 405, 494 P.2d 826 (1972).

## II

We next address the issue of whether § 6–3–124, et seq., supra, violates Article 1, § 5 of the Constitution of the State of Wyoming. That section of Wyoming's constitution provides: "No person shall be imprisoned for debt, except in cases of fraud."

■ Laude suggests that, because § 6–3–124, supra, provides that no prosecution can be had against an individual who redeems an insufficient funds check within ten days of notice of dishonor, any prosecution and conviction of an individual who has failed to redeem within ten days violates the constitutional ban on imprisonment for debt. We cannot reach that same conclusion because, as we have stated earlier, § 6–3–124, supra, punishes an individual for committing a fraudulent act rather than for debt. Since

**5.** Article 1, § 6 of the Wyoming Constitution provides:

a criminal intent to deceitfully issue an insufficient funds check is an essential element of the crime prohibited by § 6–3–124, supra, that section plainly does not violate Wyoming's constitutional prohibition against imprisonment for debt. Attacks on similar worthless check statutes on this basis have not been upheld where the intent to defraud is an essential element of the crime. *State v. Haremza, supra; State v. Kock,* 207 Neb. 731, 300 N.W.2d 824 (1981); *Patterson v. Commonwealth,* Ky.App., 556 S.W.2d 909 (1977), cert. denied 435 U.S. 970, 98 S.Ct. 1609, 56 L.Ed.2d 61.

## III

We now address the final issue of whether § 6–3–124, et seq., supra, is unconstitutionally vague and thereby violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, see fn. 4, supra, and the Due Process Clause in Art. 1, § 6 of the Wyoming Constitution.[5] This court has held that if a statute does not violate the Due Process Clause of the Fourteenth Amendment, it does not violate Wyoming's Due Process Clause. *McGarvey v. Swan,* 17 Wyo. 120, 96 P. 697 (1908). In *Sanchez v. State,* supra, 567 P.2d 270, 274, this court held that a penal statute, like the one before us, violates an essential principle of due process if "men must necessarily guess at its meaning and differ as to its application." This court went on in *Sanchez* to again set out some of the principles of due process it had discussed in prior cases as follows:

"1. The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well-established element of the guarantee of due process of law.

"2. No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.

"3. All are entitled to be informed as to what the state commands or forbids.

"No person shall be deprived of life, liberty or property without due process of law."

"4. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

"5. The constitutional guarantee of equal rights under the law (see Art. 1, §§ 2 and 3, Wyoming Constitution) will not tolerate a criminal law so lacking in definition that each defendant is left to the vagaries of individual judges and juries."

■■■ Laude argues that the language allowing redemption within ten days of notice of dishonor or nonpayment contained in § 6–3–124, supra, makes that statute impermissibly vague because it is difficult to tell when an offense has been committed. We fail to comprehend that position. The plain language of § 6–3–124, supra, makes it quite clear that for the crime to have been committed a check must have been deceitfully issued *and* the maker must have failed to redeem within ten days of notice of dishonor or nonpayment by the bank. The statute only punishes those who, at the time of issuance, had the mens rea to deceitfully issue the check; the crime is committed on the date of that occurrence. The crime is obviously not ripe for prosecution until ten days after notice of dishonor or nonpayment and the maker has failed to pay the check.[6] The language of the statute is clear, unambiguous, and subject only to the reading we have given it; the State was given fair warning by the language of the statute what conduct was prohibited. Therefore, we hold that § 6–3–124, supra,

does not violate either the Due Process Clause of the Fourteenth Amendment of the United States Constitution or the Due Process Clause in Art. 1, § 6 of the Wyoming Constitution.

For the foregoing reasons, we sustain the exceptions taken by the State and find that the district court erred in declaring § 6–3–124, et seq., supra, unconstitutional.

BROWN, Justice, dissenting, joined by ROSE, Chief Justice.

I am not entirely satisfied that § 6–3–124, W.S.1977, does not violate the equal protection clause, § 1 of the Fourteenth Amendment to the United States Constitution. Neither am I convinced that this statute does not violate Art. 1, § 5 of the Wyoming Constitution, prohibiting imprisonment for debt. I will not address those issues, however, because I think the statute should be declared unconstitutional as being so vague and indefinite as to the time the offense is committed that it violates the due process clauses of the Wyoming and United States Constitutions.[1]

Section 6–3–124(a), W.S.1977, provides: "Any person who deceitfully issues a check which is not paid because the drawer has insufficient funds with the drawee, has issued a fraudulent check and commits fraud by check *unless the check is paid by the maker within ten (10) days of receiving notice, sent to the address shown on the instrument of dishonor or non-payment.*" (Emphasis added.)

I believe that the modifying language, "unless the check is paid by the maker

6. We note that although the ten-day redemption provision in § 6–3–124, supra, is somewhat unique, it simply reflects the legislature's intent to allow, in the definition of the crime, an opportunity for an otherwise guilty individual to have a change of heart and redeem his "bad check." This is not the only example of a statute that allows for a change of heart; for example, Wyoming's inchoate crimes statutes allow for a change of heart and an abandonment after a criminal intent has been formed. Sections 6–1–201, –202, and –203, W.S.1977, Cum.Supp.1982. It is well recognized that the power to define crimes rests with the legislature and is virtually unlimited. *State v. Cook,*

26 Wash.App. 683, 614 P.2d 215 (1980); 22 C.J.S. Criminal Law §§ 11–13.

1. U.S.Constitution, amend. XIV, § 1:
"* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."
Wyoming Constitution, art. 1, § 6:
"No person shall be deprived of life, liberty or property without due process of law."

within ten (10) days of receiving notice, sent to the address shown on the instrument of dishonor or non-payment," is so vague and indefinite that it is impermissible under the federal and state constitutions. The emphasized language in the statute first appeared in Ch. 18, § 1, S.L. of Wyoming, 1980. Likewise, the prima facie evidence rule in § 6–3–125, W.S.1977, first appeared in its present form in the fraudulent check statute in Ch. 18, § 1, S.L. of Wyoming, 1980.[2]

I have difficulty determining under the statute when the crime is committed. It seems that there are two possibilities. The first possibility is that the crime is committed when the check was actually issued. If this is the date, then it appears a person issuing a fraudulent check could get absolution by paying the check after being notified. The second possibility is that the crime is committed when the check is not paid within 10 days after notice of dishonor or nonpayment. If this is the time the crime is committed, then there is a minimum of ten days between the physical act of issuing the check and the fraudulent intent. The time between the physical act and forming the intent could be weeks, months, or years. It all depends on when notice is given. Perhaps if notice cannot be given, no intent is ever formed.

I do not suppose anyone would contend that the fraudulent check statute is a malum prohibitum statute and that intent is therefore not an element of the crime. I proceed, consequently, on the assumption that intent is an element of the crime of issuing a fraudulent check. The majority has determined that the final act of committing the crime is no sooner than ten days after "notice of dishonor or nonpayment." According to the majority, then, the crime is committed piecemeal. The first segment is committed when the check is issued and the second segment, the intent to defraud, occurs ten days or more later.

The majority says, "The crime is obviously not ripe for prosecution until ten days after notice of dishonor or nonpayment, and the maker has failed to pay the check." If the crime is not ripe for prosecution, that can only mean that an element is missing. It logically follows, according to the majority, that the missing element is the intent to defraud. This may be supplied ten days or more later; then the crime is ripe to prosecute. This concept flies in the face of general criminal law. An intent acquired after the act has been committed is not the intent that controls. Under this statute a person could write a check lacking the intent to deceive, and only decide to deceive when he receives notice that the check was bad. The court in *Gay v. United States,* 408 F.2d 923 (8th Cir.1969), quoted:

> "* * * 'An act done without criminal intent does not become a crime by virtue of the fact that the defendant thereafter had the necessary intent.'" 1 Wharton's Criminal Law and Procedure, § 63, pp. 139–140 (1957 ed.).

By the same token, an act done with criminal intent, in this case the deceitful writing of the check, should not become a nullity because thereafter the check writer makes it good. Repentence is not a criminal law concept; it is a theological phenomenon. Restitution is part of repentence, but not a factor nullifying crime. Restitution may have some relevance with respect to sentence or granting probation, but has no bearing on guilt.

It seems to me that § 6–3–124(a), supra, contemplates a violation if a check is issued by a person intending to defraud. The in-

---

2. Ch. 18, § 1, S.L. of Wyoming, 1980:

"(a) Any of the following is prima facie evidence that the person at the time he issued the check or other order for the payment of money intended that it should not be paid:
"(i) Proof that at the time of issuance he did not have an account with the drawee;
"(ii) Proof that at the time of issuance he did not have sufficient funds with the drawee and that he failed within ten (10) days after receiving notice of nonpayment or dishonor to pay the check or other order; or
"(iii) Proof that when presentment was made in a reasonable time the issuer did not have sufficient funds with the drawee and he failed within ten (10) days after receiving notice of nonpayment or dishonor to pay the check or other order."

tent, therefore, must precede or occur simultaneously with the overt act of issuing the check. The adjective "deceitfully" preceding the word "issuing" certainly suggests an intent to defraud. Up to this point the statute seems to conform to general criminal law, that is, intent precedes or is simultaneous with the physical act. The problem with the statute, as I see it, is that it goes on to nullify a completed criminal act by adding, "unless the check is paid by the maker within ten (10) days." This is, in effect, an absolution clause, which is an anomoly in criminal law. Where in criminal law can restitution nullify a crime ab initio? What would we say about a larceny statute that nullified the crime if the property was returned within ten days, or an embezzlement statute that absolved the embezzler if he put the money back in the till within ten days? What would we say about a kidnapper who returned the kidnapped child within ten days?

The State in its brief says that virtually all states have a provision to redeem checks in their fraudulent check statute. The State cites *State v. Haremza,* 213 Kan. 201, 515 P.2d 1217 (1973); *Patterson v. Commonwealth,* Ky.App., 556 S.W.2d 909 (1977), cert. denied, 435 U.S. 970, 98 S.Ct. 1609, 56 L.Ed.2d 61 (1978); *Smithson v. State,* 222 Tenn. 499, 438 S.W.2d 61 (1969). These cases are not authority for the problem. In *State v. Haremza,* supra, a Kansas statute (K.S.A.1971 Supp. 21–3703) provided for a prima facie evidence rule similar to Wyoming's fraudulent check statute. Kansas had no provision in their law like the absolution clause provided for in § 6–3–124(a), supra. In *Patterson* and *Smithson,* each court was also concerned with a prima facie evidence rule rather than a nullification clause. The majority cites no cases that approve a statute which has an absolution clause like Wyoming's statute.

The absolution clause in § 6–3–124(a), supra, does not seem to be compatible with § 6–3–125(a)(ii)(iii), supra. Arguably, § 6–3–124(a), supra, gives a check writer a substantive right to notice of dishonor or nonpayment. Section 6–3–125(a) is a rule of evidence to the effect that nonpayment after notice is prima facie evidence of intent at the time the check was issued. If the absolution clause in § 6–3–124(a), supra, has validity, then § 6–3–125(a)(ii)(iii), supra, has no purpose.

There are numerous possibilities for mischief under the fraudulent check statute. What happens if the check writer is playing for time and intends to pay the check after notice, but when that time comes he cannot raise the money? Suppose notice cannot be given to the check writer. The absolution clause provides that notice is to be sent to the address, "shown on the instrument of dishonor or nonpayment." Suppose that no address is shown, or that an incorrect address is shown. How, then, is notice given? Is notice a substantive right, and is proof that the writer received notice an element of the crime? Can a person be prosecuted if he has not received notice?

The majority refers to principles of due process set out in *Sanchez v. State,* Wyo., 567 P.2d 270, 274 (1977), and earlier Wyoming cases:

" '1. The requirement of a reasonable degree of certainty in legislation, especially in the criminal law, is a well-established element of the guarantee of due process of law.

" '2. No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.

" '3. All are entitled to be informed as to what the state commands or forbids.

" '4. A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

" '5. The constitutional guarantee of equal rights under the law (see Art. 1, §§ 2 and 3, Wyoming Constitution) will not tolerate a criminal law so lacking in definition that each defendant is left to the vagaries of individual judges and juries.' "

I do not believe § 6–3–124(a), supra, comports with the principles set out in *Sanchez.*

Courts and reasonable men must guess as to when a crime is committed, when the intent is formed, what the effect is of the prima facie evidence rule § 6–3–125, supra, and what is the effect of no notice to the issuer of dishonor or nonpayment. This leaves a defendant subject to the vagaries of individual law enforcement officers and courts, because "men must necessarily guess at its meaning and differ as to its application." *Sanchez v. State,* supra, at 274. For that reason, the part of the statute discussed here should be held to be unconstitutional.