Arlyce L. BROWN, Appellant
(Defendant),

v.

STATE of Wyoming, Appellee
(Plaintiff).

No. 84–297.

Supreme Court of Wyoming.

July 31, 1985.

Leonard D. Munker, State Public Defender, Martin J. McClain, Appellate Counsel, Wyoming Public Defender Program, Cheyenne, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Div., John W. Renneisen, Senior Asst. Atty. Gen., Michael A. Blonigen, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, C.J., and ROONEY, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

Appellant was convicted of writing three fraudulent checks within a sixty-day period which exceeded $500 in the aggregate. She was sentenced as a felon to not less than one year, nor more than three years at the Wyoming Women's Correctional Institute.

The single issue raised by appellant is: "Whether there was insufficient evidence to convict Appellant of check fraud in an amount exceeding five-hundred dollars and thus, justify a felony sentence."

We will affirm.

The information in this case dated June 24, 1983, charged that appellant " * * * on the 23rd day of December, A.D. 1982 * * * did unlawfully write two or more checks within a sixty (60) day period in the State of Wyoming, said checks totaling in excess of $200, with intent to defraud, in violation of § 6–3–124(b)(ii), W.S." The state filed a bill of particulars dated June 11, 1984:

"2. The State will produce evidence showing that during the month of December, 1982, the Defendant wrote eight

(8) checks on her account with the First Wyoming Bank of Cody, Wyoming, all of said checks having been written while the defendant did not have sufficient funds with her account at the First Wyoming Bank to 'cover' the amounts of the checks. The State will show that the total amount of those checks came to $788.11. Those checks were written between December 9, 1982, and December 23, 1982."

Section 6–3–124, W.S.1977, 1982 Cum. Supp., the statute in effect at the time of the alleged offense, provided in part:

"(a) Any person who deceitfully issues a check which is not paid because the drawer has insufficient funds with the drawee, has issued a fraudulent check and commits fraud by check unless the check is paid by the maker within ten (10) days of receiving notice, sent to the address shown on the instrument of dishonor or nonpayment.

"(b) Fraud by check is:

    *     *     *     *     *     *

"(ii) A felony if the fraudulent check was for the sum of two hundred dollars ($200.00) or more, or if the offender is convicted of fraud by check involving two (2) or more checks within any sixty (60) day period in the state of Wyoming totaling two hundred dollars ($200.00) or more in the aggregate. * * *"

At the time of appellant's trial, August 2, 1984, and sentencing, October 22, 1984, the fraudulent check statute had been reenacted and renumbered § 6–3–702, W.S. 1977, 1984 Cum.Supp., providing in part:

"(a) Any person who knowingly issues a check which is not paid because the drawer has insufficient funds or credit with the drawee has issued a fraudulent check and commits fraud by check.

"(b) Fraud by check is:

    *     *     *     *     *     *

"(iii) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the fraudulent check was for the sum of five hundred dollars ($500.00) or more, or if the offender is convicted of fraud by check involving two (2) or more checks issued within any sixty (60) day period in the state of Wyoming totaling five hundred dollars ($500.00) or more in the aggregate."

The only difference in the later statute that is significant here is that the dollar amount in the aggregate was raised from $200 to $500 for the offense to result in a felony.[1]    Section 6–1–101(c), W.S.1977 (June 1983 Replacement), provides:

"In a case pending on or after the effective date of this act, involving a crime committed prior to the effective date, if the penalty under this act for the crime is different from the penalty under prior law, the court shall impose the lesser sentence."

Because § 6–3–702(b) raises the aggregate dollar amount and § 6–1–101(c) indicates which penalty applies, it is clear that unless an aggregate of $500 in fraudulent checks were proved within a sixty-day period, appellant could not be properly sentenced as a felon. *Attletweedt v. State,* Wyo., 684 P.2d 812 (1984).

Appellant has broken down her sufficiency of the evidence issue into two parts:

### I

Notice as an element of the offense, and

### II

Variance between criminal complaint and charge upon which conviction was based.

### I

At a trial before the court, the state introduced into evidence numerous checks

---

1.  The legislature cannot resist the temptation to "tinker" with the check fraud statute almost every time they are in session. See Ch. 128, § 1, S.L. of Wyoming, 1985; Ch. 44, §§ 2 and 3; S.L. of Wyoming 1984; Ch. 96, § 2, and Ch. 171, § 1, S.L. of Wyoming, 1983; Ch. 75, § 3, S.L. of Wyoming, 1982; Ch. 18, §§ 1, 2 & 3, S.L. of Wyoming, 1980.

issued by appellant showing insufficient funds or account closed. Appellant was found guilty of fraud by check, a felony, and sentenced accordingly. The court relied on a check issued December 11, 1982, in the sum of $247.76; a check issued December 16, 1982, in the sum of $58.52; and a check issued December 23, 1982, in the sum of $235.87, a total of $542.15 in checks written within a 60-day period.

■ Appellant suggests that the notice portion of § 6–3–124(a), W.S.1977, 1982 Cum.Supp., is an element of the crime of fraud by check. We disagree.

"It is well settled in the decisions in this state that the statutory notice itself is not an element of the offense, and failure to pay after receipt thereof is merely one way by which the State may attempt to show fraudulent intent and knowledge of the worthlessness of the check. [Citations.]" *State v. Merriweather*, Tenn., 625 S.W.2d 256, 258 (1981). See also *State v. Haremza*, 213 Kan. 201, 515 P.2d 1217 (1973).

The elements of this offense, other than date and venue, are set out in the first portion of § 6–3–124(a), as follows:

"Any person who deceitfully issues a check which is not paid because the drawer has insufficient funds with the drawee, has issued a fraudulent check and commits fraud by check unless the check is paid by the maker within ten (10) days of receiving notice, sent to the address shown on the instrument of dishonor or nonpayment."

The notice portion of § 6–3–124(a) is an anomaly in the law. This portion of the statute provides, "an opportunity for an otherwise guilty individual to have a change of heart and redeem his 'bad check.'" *State v. Laude*, Wyo., 654 P.2d 1223, 1229 (1982).

After criminal intent has been formed, the notice portion of the statute provides for abandonment of such intent. This notice portion has also been characterized as a "repentence" concept, "nullification of a criminal act," or an "absolution clause." *State v. Laude*, supra, at 1230–1231

(Brown, J., dissenting). While abandonment of criminal intent is rare, it is not unheard of. For example, § 6–1–301(b), W.S.1977 (June 1983 Replacement), provides no liability for criminal attempt by one who avoids " * * * the commission of the crime attempted by abandoning his criminal effort." In like manner, § 6–1–302(b) provides no liability for solicitation if one renounces his criminal intent; and § 6–1–303(b) allows one to withdraw from a conspiracy, thereby exonerating himself from the crime.

In Laude this court also said: "The crime is obviously not ripe for prosecution until ten days after notice of dishonor or nonpayment and the maker has failed to pay the check." Id., at 1229. This statement does not say that the notice provision is an element of the crime, but rather suggests a procedural requirement. If the notice portion of the statute is somewhat confusing, appellant cannot complain because the notice provision of § 6–3–124(a) is a humane provision in the law that provides for abandonment of criminal intent or a change in heart and allows an otherwise guilty person to avoid conviction. This court's holding in Laude, supra, suggests, but does not hold, that the ten-day notice must be given before a prosecution can be commenced. Section 6–3–125(a)(i), W.S.1977, 1982 Cum. Supp., seems to hold otherwise:

"(a) Any of the following is prima facie evidence that the person at the time he issued the check or other order for the payment of money intended that it should not be paid:

"(i) Proof that at the time of issuance he did not have an account with the drawee."

Here, notice was given, so there is no need to explain what was meant by "not ripe for prosecution" in Laude, nor determine if the ten-day notice is a prerequisite to prosecution.

■ On January 10, 1983, and again on January 17, 1983, a local credit service in Cody sent letters to appellant at her Cody address, and advised her that checks in the

sum of $247.76, dated December 11, 1982 and $58.52, dated December 16, 1982, had been returned because of insufficient funds, and demanded payment. On December 29, 1982, the First Wyoming Bank —Cody, notified appellant by letter that her account had been closed because of "excessive overdraft activity" and that any other checks presented would be returned unpaid with a notation "account closed." The notice recited a substantial overdraft balance and demanded payment within ten days. This notice from the bank did not specifically identify the check for $235.87, dated December 23, 1982; however, the overdraft balance shown on the notice was greater than the amount of the check. From this notice given by the bank, appellant could reasonably determine that the December 23, 1982, check in the sum of $235.87 had been dishonored or would be dishonored upon presentation.

The ten-day notice provided for in § 6-3-124(a), W.S.1977, 1982 Cum.Supp., does not specify the words that must be contained in the notice, nor does it indicate who must give the notice. The intent appears to be that the maker of an insufficient funds check be advised of "dishonor" or "nonpayment."

Under the circumstances of this case we hold that the notice provisions of § 6-3-124(a) have been minimally complied with.

## II

■ Appellant contends that "the criminal complaint charged one crime and appellant was tried and convicted of a different crime." It appears that appellant is contending that this is a fatal variance between the complaint and information and the proofs which resulted in her conviction.

The critical language in the complaint and information are identical, that is, appellant did "unlawfully write two or more checks within a sixty-day period in the State of Wyoming, said checks totaling in excess of $200.00, with intent to defraud, in violation of § 6-3-124(b), W.S." In the probable cause portion of the criminal complaint five checks are listed, beginning with

a December 23, 1982 check and ending with a February 23, 1983 check. Both the information and the complaint indicate December 23, 1982, as the date of the crime, but neither indicate the specific sixty-day period relied on. However, the bill of particulars identified the checks relied on for conviction as those written between December 9, 1982, and December 23, 1982.

Ordinarily, in charging a crime, only a single date is significant. Because of the peculiar nature of the check fraud statute, a sixty-day period may be significant under § 6-3-124(b)(ii). In the complaint and information the date of December 23, 1982, was specified. This date could be the beginning of a sixty-day period, the ending of a sixty-day period, or it could be some place between the beginning and ending of a sixty-day period. The critical consideration is that two or more "insufficient funds" checks be issued within a sixty-day period. The statute allows for aggregation of any sixty-day period.

The complaint, including the probable cause portion, indicated that the checks relied on were issued on and after December 23, 1982. The information, together with the bill of particulars, indicated that the checks relied on were issued on and before December 23, 1982. Appellant claims that there was a fatal variance between the complaint and information and that appellant was charged with one crime and convicted of a different crime.

The problem of variance was discussed in *Bartlett v. State*, Wyo., 569 P.2d 1235 (1977). In that case the court set out the applicable facts and then discussed variances generally, saying:

"* * * [D]efendant claims he was denied a substantial legal right to a preliminary hearing on the underlying act of speeding—since the original complaint referred only to driving while under the influence of intoxicating liquor. The information filed against defendant, after his preliminary hearing, included the speeding allegation. This is not a situation where there is an amended information. See Rule 9(c), W.R.Cr.P. Rather,

it is a situation where there is a variance between the original complaint and a subsequent information. See 41 Am. Jur.2d Indictment and Information § 20; and 42 C.J.S. Indictments and Informations § 73(j). Wyoming has no specific provision governing such variances. Generally, where an information can be filed only after a preliminary hearing, as is true in Wyoming under Rule 9(a), W.R. Cr.P., the information must charge substantially the same offense alleged in the complaint under which a preliminary hearing was held. *State v. Perry*, 27 Utah 2d 48, 492 P.2d 1349. This is substantially the theory on which Rule 9(c), supra, is based. * * * " Id., at 1242–1243.

The court then held:

" * * * In the present case, the defendant was charged with involuntary manslaughter in both the complaint and the information—only an underlying act was added. In light of the fact that the State need only have charged the offense of manslaughter in the words of the statute, we cannot see how the offense charged was changed, or how the defendant was prejudiced. [Citation.]" Id., at 1243.

In the case here both the complaint and information charged fraud by check as described in § 6–3–124, W.S.1977, 1982 Cum. Supp. As in *Bartlett,* the only difference is a variance between some underlying facts alleged in the complaint and information. The state did not alter the crime charged, but only relied on some different underlying facts. The different underlying facts, i.e., checks dated December 11 and December 16, 1982, are within the sixty-day period. The checks relied on for a conviction at trial were specified in a bill of particulars given to appellant well in advance of trial.

Appellant makes a technical argument and attempts to take advantage of some quirks in an imperfectly drafted statute. Appellant cannot, in good faith, contend that she did not know that the three checks relied on for her conviction had been dishonored and payment demanded, nor can she claim that she did not know what checks the state relied on to prove her guilty of fraud by check.

Affirmed.

CARDINE, Justice, dissenting, with whom ROSE, Justice, joins.

I dissent.

Appellant was convicted of fraud by check, a felony, and sentenced to one to three years in prison. Appellant's conviction was based upon issuance, within a sixty-day period, of three insufficient funds checks · totalling more than $500. These three checks were issued on December 11, December 16, and December 23, 1982.

The fraudulent check statute in effect on the date these checks were issued, § 6–3–124, W.S.1977, provided in part as follows:

"(a) Any person who deceitfully issues a check which is not paid because the drawer has insufficient funds with the drawee, has issued a fraudulent check and commits fraud by check *unless the check is paid by the maker within ten (10) days of receiving notice, sent to the address shown on the instrument of dishonor or nonpayment.*" (Emphasis added.)

A letter was mailed to appellant giving her notice of dishonor or nonpayment of the checks issued December 11 and December 16. She never received notice that the check issued December 23 had been dishonored or not paid. The majority of this court in its opinion suggests that a letter from the bank, dated December 29, advising appellant that her account had been closed was notice to appellant that her check of December 23 had been dishonored or not paid. The suggestion is fatally flawed. The check of December 23 could have been paid before the account was closed. But that is not the point. The statute under which appellant was charged and prosecuted requires "notice * * * of dishonor or nonpayment," not a subsequent notice of "account closed."

We have said

"that where there is plain, unambiguous language used in a statute there is no room for construction, and a court may not properly look for and impose another meaning. \* \* \* [G]enerally speaking penal statutes are to be strictly construed \* \* \*." *State v. Stern,* Wyo., 526 P.2d 344, 346–347 (1974).

Appellant was never given notice of dishonor or nonpayment; and this court, apparently feeling uncomfortable with the suggestion that a later notice of "account closed" is compliance with this requirement of § 6–3–124, supra, states in the majority opinion that the "notice of dishonor" is just a "procedural requirement." Does the court mean to say that compliance with a procedural requirement is not required? Surely not, for adoption of such a rule would have the effect of repealing the notice requirement of § 6–3–124(a), supra; that would be legislating, something this court cannot and should not do.

Even more astonishing than the court's suggestion that the notice of dishonor is procedural and may be ignored, is the following statement by the court:

"If the notice portion of the statute is somewhat confusing, appellant cannot complain because the notice provision of § 6–3–124(a) is a humane provision in the law that provides for abandonment of criminal intent or a change in heart and allows an otherwise guilty person to avoid conviction."

I cannot fathom why appellant cannot complain about not receiving the statutory notice and having an opportunity to avoid conviction.

In *State v. Laude,* Wyo., 654 P.2d 1223, 1229 (1982), we stated:

"The plain language of § 6–3–124, supra, makes it quite clear that for the crime to have been committed a check must have been deceitfully issued *and the maker must have failed to redeem within ten days of notice of dishonor or nonpayment* by the bank. \* \* \* *The crime is obviously not ripe for prosecution until ten days after notice* of dishonor or

nonpayment and the maker has failed to pay the check." (Emphasis added.)

Mailing a letter to the issuer of a check that the check was dishonored or not paid is neither difficult nor onerous. Such notice is required by § 6–3–124, supra. Every prosecutor knows of that requirement and should comply. We also said in *State v. Laude,* supra at 1227:

"The statute \* \* \* confers a benefit on everyone \* \* \* who has written an insufficient funds check \* \* \* a grace period in which to redeem the check before being subjected to prosecution. An additional defense is specifically provided for those charged \* \* \*."

Appellant in this case was not given notice of dishonor and, therefore, was deprived of the statutory grace period for redemption and the additional defense available according to State v. Laude, supra. For the reasons stated, I would reverse and remand this case for resentencing upon the charges with respect to the two insufficient funds checks not in dispute or such other disposition as is appropriate.